Shackelford, J.,
delivered the opinion of the Court.
This suit is brought for an alleged breach of covenant of seizin. In December, 1851, the defendant conveyed to the plaintiff, a lot of ground in the City of Memphis. The deed purports to be for the considera *22 tion of $4,000. It is proved that the consideration of the deed was for a steamer, (St. Cloud,) worth $2,500.00, given in exchange for the lot. The plaintiff was let into possession, and has not been disturbed. The deed executed upon the exchange of the property, contained only a covenant of warranty in the usual form. About eighteen months after the execution of the first deed, the plaintiff applied to Cheek, who executed another deed' of same date, with covenants of seizin, and against the encumbrances. Upon this deed the action is based.
The breach assigned, is, that the defendant was not seized, and the title is in another. Cheek derived title to this lot from one Yarnum Ogment, bearing date November 5, 1849. It appears, Ogment had divested himself of the title, by an ante-nuptial settlement, made May 11th, 1847, by which the title was vested in one James A. Banks. The recitations of said settlement state, that the Trustee, Banks, is to hold the said lot in trust, during the natural life of Emily V., (with whom the marriage was about to be solemnized;) the deed to take effect upon the consummation; and to hold the said lot during the natural life of Emily V., with remainder over in fee, to the issue of the marriage, including the two children by a former marriage, to be equally divided between them. The deed further recites, the said Ogment should have, possession of said estate, during the joint lives of himself and the said Emily, and the survivor of the two should have possession in like manner. The Trustee was authorized to sell, by request in writing, etc.
*23 The jury was instructed by the Court, that the latter deed, containing new and additional covenants, if made without new consideration to support it, would, for that reason, he inoperative and void. A judgment was rendered for the defendants. There was an appeal to this Court, and at the April Term, 1859, the judgment was reversed. The Court held, if, in the absence of fraud, the defendant voluntarily and understandingly executed the second deed, with the intent, and for the purpose of carrying out the original agreements between the parties at the time of making the contract, and to supply omissions in the first deed, etc., the second deed would be valid and binding on the vendor, and he would be estopped from questioning his liabilities on the covenants of the second deed. The case was again submitted to a jury, and on the 16th of April, 1861, a judgment wras rendered for the plaintiff for one cent damages; from which he has appealed to this Court.
On the last trial of the cause, the original agreement between the parties was in evidence. Erom that, it appears the plaintiff gave to defendant, the steamer St. Cloud, with the fixtures, etc., for the lot of ground and mill thereon, and the defendant agreed to make him a warranty title. The second deed was written by the father of the defendant, upon the representations of the plaintiff, that the deed was defective. There is no intimation of fraud, but the deed containing the additional covenants was freely and voluntarily made, upon the representation that the first one was defective.
It appears from the record, that the plaintiff entered into the possession of the lot upon the execution of the *24 deed, and lias continued to hold it, and was in possession at the trial of this suit. After his occupancy, he pulled down and removed a mill house erected by defendant, Cheek, on the lot. Ogment and family, are still living. This suit was commenced on the 17th of August, 1855.
The charge of the Court is very long, and we shall notice only such portions as we think are manifestly erroneous. The Court instructed the jury, that, if they believed, from evidence, the plaintiff and his vendors have had actual possession of the lot, holding the same as their own, adversely, under a deed, or other assurance of title, purporting to convey an estate in fee, for the space of seven years before the trial of the cause, then the plaintiff would be vested with the title to the land, and he could only recover nominal damages, on the breach of the covenants of seizin; that the statutes of limitation would commence running against the Trustee, as soon as the adverse possession was taken, and if it continued to run for seven years before the trial, the Trustee would be barred in any action to recover the same, and the beneficiaries also, would be barred.
Eor the proper solution of the question involved, it becomes necessary to give a construction to the ante-nuptial settlement of the 11th May, 1847, executed by Ogment to Banks, the Trustee, and see whether the children born of the marriage, and the two children by the former marriage, take a legal estate in remainder, upon the termination of the life estate of Ogment and wife. It is a general rule of law, that the Trustee, in *25 whom is vested a legal estate, takes such interest therein as the purposes of the trust require; and as soon as the trust is satisfied, 'the legal estate will vest in the person beneficially entitled: 2 Swan, 316.
The ■ duties of the Trustee, prescribed in this deed, were, to hold the property for the sole and separate use of the feme for life, permitting the husband to enjoy the use of the same; and after the death of the husband and wife, the remainder in fee to the children. Upon the termination of the life estete, his duties as Trustee will cease, by the terms of the deed, and the legal estate, by operation of law, will vest in the children of Ogment. By the provisions of the deed, the Trustee had the power to sell, upon the request, in writing, ©f Ogment and wife. Ogment having conveyed the property by deed, and his vendee, and those claiming under him, holding adversely for more than seven years, the Trustee is barred by the statute of limitations — the power of disposition under the provisions of the deed is lost, and the legal estate will be cast upon the children, upon the termination of the life estate The deed does not limit the estate of the Trustee, to hold for the use of the wife, and then for the use of the childreh. Upon the death of Ogment and wife, this property is to be equally divided between them. No use or trust is’ declared for the children, after the termination of the life estate. The deed vests a remainder in the children, to take effect after the death of the person for life, for whose use the trust was created.
This question came_ before this Court, in the case of Smith vs. Thompson, (2 Swan, 386.) The deed, in terms, *26 is similar to the one under consideration. The property was conveyed by Smith to Yancey, for the separate use of the wife; the Trustee to hire and control the 'slaves for her interest, for life, and after her death, the negroes, with their increase, to be equally divided between all her children.
The Court says, in commenting on the principle: “a different rule of construction Avould apply, if the estate had been given, or limited to the Trustee, for the use or benefit of the children in remainder. In that case, there would have been no conflict in the limitations, and they both might well subsist and stand together; the legal estate being in the Trustee, and the use or beneficial interest being in the children, the use would not be executed, and converted into a legal estate.” “Though the property conveyed in the deed, was slaves,” the Court says, “it is of the same effect, if the limitations were of real estate.” The principles settled in that case, are conclusive of those involved in this. The life estate not having terminated, no right of action will vest in the children of Ogment and wife, or the children of the prior marriage, to sue before the termination of the life estate. The deed of Ogment to Cheek being an assurance of title purporting to convey the fee, and he, and those claiming under him, having had the adverse possession, claiming under the deed for more than seven years, the statute of limitations is a bar to the right of the Trustee, and the tenants for life; but the children, having no right of action until the termination of the life estate, are not prejudiced by the adverse holding. This covenant of seizin was broken as soon as made, and the right of action ex *27 ists immediately. A covenant of seizin has been defined to be, an assurance to the purchaser, that the bargainor has the very estate, in quantity and quality, -which he purports to convey; and for a breach, the measure of damages may be according to the circumstances of the case, the consideration money, and interest, or a less amount, or even nominal damages.
This question came before this Court, in the case of Kincaid vs. Brittain, (5 Sneed, 123,) in which the Court says: “If the failure of title be only as to a part of the land; or if the purchaser has, himself, extinguished the paramount title; or if his actual possession has been of such a character, and continued for such a length of time, as to make the title valid, under the statute of limitations ; or if, for other cause, the breach be merely a technical one, the purchaser will not be entitled to have the damages measured by the consideration money, and interest. Such is the proper measure of damages, only when there is an entire failure of title, or when the purchaser has an election to treat it as such. The vendor of the defendant in this case, had divested himself of the title, by the deed to Banks, of the 11th May, 1847; consequently, he conveyed no title by his deed to the defendant; and though upon the trial of the cause, the right of -the Trustee was barred, and an estate for the life of Ogment and wife, was in the plaintiff, by the statute of limitations, he had the right to elect to treat it as an entire failure of title, and to recover the amount of purchase money, which would be the amount actually paid, with the interest thereon. What would have been the rights of the parties, if the statute of limitations *28 ba-cl operated to vest tbe absolute estate in tbe plaintiff before tbe trial, and be having previously instituted bis suit upon tbe breach of tbe covenants of seizin, it is unnecessary for us now to determine, as tbe defendant has not tbe estate in quality and quantity, which be purports to convey; and tbe plaintiff having elected to sue for tbe purchase money, is entitled to recover.” Tbe effect of a recovery of an equivalent in damages for the purchase money, would be to entitle tbe vendor to a re-conveyance; and if refused, a court of equity would enforce it; and, this Court said, in tbe case of Kin-caid vs. Brittain, (5 Sneed, 124,) would, perhaps, by the operation of law, re-invest the title in tbe vendor. The defendant will have tbe right, where the plaintiff seeks, in tbe action, to recover tbe purchase money, and interest, to set-off tbe rents and profits of tbe land, and such damages as may be sustained by reason of tbe plaintiff removing, and appropriating any permanent improvements tbe defendant may have erected on the premises.
Tbe judgment of tbe Circuit Court will be reversed, and a new trial awarded.